Vermont Superior Court
Filed 10/15/24

SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-01958

Vermont Human Rights Commission v. Bissonette Properties, LLC

Opinion and Order on Motion to Dismiss

Defendant Bissonette Properties, LLC, has moved to dismiss this action for failure to state a claim under Vt. R. Civ. P. 12(b)(6). Plaintiff the Vermont Human Rights Commission (HRC) opposes the request. The HRC is represented by Mitchell Rotbert, Esq. Bissonette is represented by Pietro Lynn, Esq. On October 7, 2024, the Court heard oral argument from counsel on the motion. The Court makes the following determinations.

I.      The Rule 12(b)(6) Standard

The Vermont Supreme Court disfavors Rule 12(b)(6) motions to dismiss. "Dismissal under Rule 12(b)(6) is proper only when it is beyond doubt that there exist no facts or circumstances consistent with the complaint that would entitle Plaintiff to relief." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 576 (mem.) (citing *Union Mut. Fire Ins. Co. v. Joerg*, 2003 VT 27, ¶ 4, 175 Vt. 196, 198)). In considering a motion to dismiss, the Court "assume[s] that all factual allegations pleaded in the complaint are true, accept[s] as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume[s] that all contravening

assertions in defendant's pleadings are false." *Mahoney v. Tara, LLC*, 2011 VT 3, ¶ 7, 189 Vt. 557, 558–59 (mem.) (internal quotation, brackets, and ellipses omitted).

A complaint must still meet a minimum standard of pleading, however. Vt. R. Civ. P. 8 requires that a complaint's allegations show "the pleader is entitled to relief," and it must provide "fair notice" to defendant of the claim against him, Vt. R. Civ. P. 8, Reporter's Notes.

II.    The Allegations of the Complaint

The HRC alleges as follows. Christie Delphia and her mother, Bette Sears, (Tenants) moved into an apartment in November 2018 in a building that soon thereafter came to be managed, but not owned by Bissonette, starting in April 2019.[1] Ms. Delphia has "physical and mental impairments to her respiratory and neurological systems, diagnosed as intractable headaches and asthma, that substantially impaired her capacity to breath and to think." Until her death, Ms. Sears had "physical and mental impairments to her respiratory system, diagnosed as chronic obstructive pulmonary disease . . . that substantially impaired her capacity to breath."

The apartment building had a no-smoking policy in place before Tenants moved in and throughout their tenancy. Regardless, a neighboring tenant smoked indoors and used air fresheners to try to cover up the smell, both of which entered Tenants' apartment, gave them headaches, worsened their ability to breathe and

---

[1] William Bissonette is alleged to be the member-manager of Bissonette. He also is alleged to be the member-manager of PBGC LLC, which owns the apartment building. PBGC is not a defendant in this case.

think, and caused distress. Tenants reported the matter to Bissonette, which did nothing. Tenants gave Bissonette a letter from a doctor as to the need to be free from exposure to smoke, and Bissonette did nothing. When Tenants began contacting municipal and state authorities in an attempt to enlist their assistance in the wake Bissonette's intransigence, Bissonette "commenced efforts to evict or otherwise to remove" Tenants from the building. Tenants moved out in March 2023.

Bissonette had never taken any action to enforce the no-smoking policy, to otherwise help them, or to engage in any discussions with them about the matter and how to accommodate their concerns. Particularly, Bissonette did not modify the no-smoking policy to one that would allow smoking in a designated area that would not affect Tenants.

The HRC claims that the alleged course of conduct shows that Bissonette discriminated against Tenants on the basis of disability in violation of 9 V.S.A. § 4503(a)(10) by not engaging with them as to possible reasonable accommodations, and by not making a reasonable accommodation in its policies. It then retaliated against them in violation of 9 V.S.A. § 4506(e) by attempting to evict or remove them from the building when they complained.

III.    Analysis

Bissonette argues that the complaint fails to state a claim because: (1) only housing owners—and not property managers—can be liable for housing discrimination; (2) the Complaint contains no allegations that Bissonette had

3

authority to modify policies or take the discriminatory actions alleged in the complaint; (3) Bissonette had no obligation to construct a new facility to enable smoking; (4) Bissonette had no duty to control tenant behavior; and (5) the actions alleged to constitute retaliation could only have been done by the landlord and, in any event, Plaintiffs do not state a viable claim under the Act that can form a basis for the alleged retaliation.

A.    <u>Whether Property Managers Can Be Liable</u>

Bissonette's contention that a property manager, as a matter of law, cannot be liable under the Act is belied both by the plain language of the law and case law construing the analogous federal Fair Housing Act.

The VFHA makes it "unlawful for *any person*: . . . (10) To refuse to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling unit, including public and common areas." 9 V.S.A. § 4503(a)(10) (emphasis added).  It further provides that:  "A *person* shall not coerce, threaten, interfere, or otherwise discriminate against any individual who," among other things, complains about or opposes violations of the VFHA.  9 V.S.A. § 4506(e) (emphasis added).  "Person" is generally defined to "include any natural person, corporation, municipality, the State of Vermont or any department, agency, or subdivision of the State, and any partnership, unincorporated association, or other legal entity" and is not more specifically defined in the Act.  1

4

V.S.A. § 128. Nothing in the language of the VFHA exempts from its reach property managers as a subclass of persons.

Moreover, our Supreme Court has instructed that the Act is "patterned on Title VIII of the Civil Rights Act of 1968 (the FHA or Fair Housing Act), 42 U.S.C. §§ 3601–3631 . . . and therefore, in construing [the analogous Vermont statutes], we consider cases construing the federal statute." *Hum. Rts. Comm'n v. LaBrie, Inc.*, 164 Vt. 237, 243 (1995). Federal FHA claims are commonly brought against property managers. *See, e.g., CNY Fair Hous., Inc. v. WellClover Holdings LLC*, No. 5:21-CV-361 (BKS/ML), 2024 WL 3163199 (N.D.N.Y. June 24, 2024) (discrimination on the basis of handicap); *Butler v. Sundo Cap., LLC*, 559 F. Supp. 3d 452, 463 (W.D. Pa. 2021) (discrimination on the basis of sex) ("[A]gents such as property managers can be held liable when they have personally committed or contributed to a Fair Housing Act violation." (citation omitted)); *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402 (E.D. Va. 2011) (discrimination on the basis of handicap), *aff'd in part, vacated in part sub nom. Matarese v. Archstone Communities, LLC*, 468 F. App'x 283 (4th Cir. 2012); *Wiesman v. Hill,* 629 F. Supp. 2d 106 (D. Mass. 2009) (discrimination on the basis of handicap).

The lesson from those cases is that property managers can be liable under the FHA (and the Act) depending upon the specific conduct involved. Determining the precise conduct involved in this action and the interactions between the parties are matters that go well beyond the narrow scope of a motion to dismiss, however.

5

The cases cited by Defendant are not to the contrary. In support of its contention that property managers cannot be liable under the Act, Bissonette relies on: *St. Clair v. Vermont Hum. Rts. Comm'n*, No. 2005-476, 2006 WL 5837522 (Vt. Oct. 2006) (unpub. mem.); *Hum. Rts. Comm'n v. LaBrie, Inc.*, 164 Vt. 237 (1995), *State v. Severance*, 150 Vt. 597 (1988). Those cases, though, were brought against owners, not property managers, and none includes any holding stating that property managers can never be liable under the Act.

B.      Bissonette's Authority

Bissonette is most zealous in arguing that there is no allegation in the complaint that it, as property manager, had any authority to engage in any discussions as to accommodations, to take any ameliorative actions, to take actions against other tenants to enforce the no-smoking rule, or to evict Tenants. The HRC counters that such a contention is implicit in its pleading.

Certainly, no digital trees would have been felled by including such an express allegation in the complaint. Nonetheless, it is the Court's duty to consider the allegations of the complaint and give the Plaintiff the benefit of any reasonable inferences to be drawn therefrom. *See Mahoney*, 2011 VT 3, ¶ 7, 189 Vt. at 558–59; *see also* Vt. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

Here, the Complaint alleges that Tenants repeatedly appealed directly to Bissonette for assistance with the smoking problem and for accommodations, and they provided a doctor's note to Bissonette to demonstrate the gravity of the matter.

6

Bissonette refused to communicate with Tenants, and when they complained to state and municipal authorities, Bissonette took action to evict or otherwise oust them from the building.

The Court believes it is a necessary and reasonable implication from the above that Plaintiff is contending that Bissonette had the actual or apparent authority to act as alleged. No more is needed to survive the Rule 12(b)(6) motion.

C. Whether Bissonette Had A Duty To Construct A No-Smoking Facility

Bissonette argues that it had no duty to construct a new facility—evidently a structure where other tenants would go to smoke. The HRC says there is no such claim in the complaint. The Court agrees. While the HRC maintains that one solution to the dilemma may have been the "creation of a designated [smoking] area away from the Apartment," that is not the only potential relief that may have been developed. And, creating a smoking area does not necessarily involve construction of a facility.

D. Bissonette's Duty to Control The Behavior of Other Tenants

Bissonette contends that it had no duty to control the behavior of those tenants who violated the smoking ban. The Court disagrees, at least at this stage. First, the HRC is asserting that Bissonette's failure to engage in the back-and-forth process anticipated by a reasonable accommodation request is, standing alone, a violation of the Act. Defendant has not disputed that notion in its motion.

Second, while a no-smoking policy is strong evidence of action designed to address the impact of smoke on Tenants, it may not have been the only option.

7

Additionally, Bissonette could have put up no-smoking signs, could have spoken directly with the offending parties, could have put out a tenant handbook or flyer reinforcing the no-smoking policy, or different apartments may have been offered to the involved parties. *See Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 865 (7th Cir. 2018) (discussing similar options available). Other alternatives may also have been discovered during the accommodations discussions that allegedly never occurred.

Third, while Bissonette has cited some cases supporting the notion that there is no actionable duty to evict or otherwise control a tenant to protect someone under the FHA or the Act, *see, e.g., Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 70 (2d Cir. 2021); *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1143 (S.D. Fla. 2004); *Siino v. Reices*, 628 N.Y.S.2d 757, 758 (1995), the precedents are limited. At the dismissal stage, the Court is not willing to adopt the view that a landlord or property manager may simply adopt a policy to accommodate one tenant's disability; take no action to enforce the policy; and, thereby, condone ongoing violations of the agreed-upon accommodation. *Cf. Wetzel,* 901 F.3d at 865.

E.    Retaliation

Bissonette further argues that there is no act of retaliation set out in the complaint and that a claim of retaliation must be based on a meritorious claim that the defendant otherwise violated the Act.

The act of retaliation alleged in the complaint is that Bissonette took steps to evict or otherwise oust Tenants from their housing in response to their complaints

8

to municipal and state authorities. *See Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 274 (E.D.N.Y. 2009) (retaliation under the FHA can take the form of an eviction action). To the extent that Bissonette argues that only a property owner can take such steps and thereby become responsible for retaliation, the Court has addressed that argument above. If the HRC can prove that Bissonette was directly involved in those decisions or actions, Bissonette may have liability for retaliation.

Bissonette's argument that a retaliation claim can only be predicated on a successful claim that the defendant has violated the Act (which it claims does not exist here) is overstated. Retaliation claims typically depend on a showing that the retaliation was a response to the plaintiff's engagement in "protected activity." *See Pelot v. Criterion 3, LLC*, 157 F. Supp. 3d 618, 620 (N.D. Miss. 2016) ("To state a retaliation claim under [the FHA] . . . [Plaintiff] must establish (1) that he was engaged in an activity protected by the Fair Housing Act; (2) that [Defendant] took adverse action against him; and (3) that a causal connection existed between the protected activity and the adverse action."). The Act protects the right to complain about and participate in investigations of alleged VFHA violations. *See* 9 V.S.A. § 4506(e)(2), (3). It does not appear to immunize defendants who retaliate against plaintiffs because plaintiffs subsequently are unable to prove their alleged underlying violations. The allegation here is that Tenants complained to authorities that Bissonette was discriminating against them in their housing on the basis of disability and that is why Bissonette retaliated against them through the

9

eviction process. At a minimum, any such determination would need to be made on a more complete record.

Moreover, the predicate for Bissonette's argument—that HRC cannot prove a violation of the Act—is out of step with the procedural posture of the case. The Court has concluded that the HRC has not failed to state a claim. That is all it needs to do at this stage of things.

<u>Conclusion</u>

For the foregoing reasons, Bissonette's motion to dismiss is denied.

Electronically signed on October 15, 2024, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge

10