# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 02-2975

ROBYN HALPRIN and RICK HALPRIN,

*Plaintiffs-Appellants,*

*v.*

THE PRAIRIE SINGLE FAMILY HOMES OF
DEARBORN PARK ASSOCIATION, *et al.,*

*Defendants-Appellees.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 C 4673—**James H. Alesia**, *Judge.*

_____

ARGUED SEPTEMBER 27, 2004—DECIDED NOVEMBER 4, 2004

_____

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The district court dismissed this suit under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, for failure to state a claim, specifically under sections 3604 and 3617; there are also state law claims, but as is usual the district judge relinquished jurisdiction over them when he dismissed the federal claims before trial. The plaintiffs are a couple who own a home in a suburban subdivision. The principal defendant is the homeowners' association that

manages the subdivision and provides various services to the homeowners. The other defendants, with the exception of a corporation (and its president) that also provides services and is alleged to have acted in cahoots with the association in harassing the plaintiffs, are members of the association; that is, they are the plaintiffs' neighbors.

The complaint—our only source of facts, because the suit was dismissed for failure to state a claim—alleges the following: One of the plaintiffs is Jewish. The president of the association wrote "H-town property" on a wall of the plaintiffs' property, "H-town" being short for "Hymie Town," and he further vandalized the property by damaging trees and plants and cutting down strings of holiday lights. When the plaintiffs posted flyers offering a reward for identifying the vandal, the president destroyed or removed the flyers. To further thwart the plaintiffs' efforts to investigate the vandalizing of their property, the association destroyed minutes of its board meetings and erased a tape recording of a meeting at which the president had threatened to "make an example" of the plaintiffs. The defendants applied chemicals to the plaintiffs' yard against the plaintiffs' wishes and with adverse effects on their health and peace of mind and adopted rules restricting the plaintiffs' lawful use of their property. The entire campaign of harassment was caused or at least influenced by the religion of the Jewish plaintiff. Of course we do not vouch for any of these allegations, but for purposes of this appeal we must assume that they are true.

A section of the Fair Housing Act makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. The only one of

the enumerated sections that is possibly relevant here is section 3604, which makes it unlawful "(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin," or "(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." The language indicates concern with activities, such as redlining, that prevent people from acquiring property. *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775 (7th Cir. 2002); *NAACP v. American Family Mutual Ins. Co.*, 978 F.2d 287 (7th Cir. 1992); *Mitchell v. Shane*, 350 F.3d 39 (2d Cir. 2003); *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 229-31 (6th Cir. 2003); *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470 (9th Cir. 1998); *Hogar Agua y Vida en el Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994). Our plaintiffs, however, are complaining not about being prevented from acquiring property but about being harassed by other property owners. So it is difficult to see how they can have been interfered with in the enjoyment of any right conferred on them by section 3604.

As a purely semantic matter the statutory language might be stretched far enough to reach a case of "constructive eviction," which is one way to describe the present case (more precisely, "attempted constructive eviction"). If you burn down someone's house you make it "unavailable" to him, and "privileges of sale or rental" might conceivably be thought to include the privilege of inhabiting the premises. Acts of post-sale discrimination have been litigated successfully under the Act in two reported cases, *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972); *Krueger v. Cuomo*, 115 F.3d

487 (7th Cir. 1997), but in neither was the Act's applicability to such discrimination discussed—apparently the issue hadn't been raised. In several other cases the Act has been held to forbid harassment amounting to constructive eviction by analogy to "constructive discharge," a form of discrimination recognized in Title VII cases. *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996); *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364-65 (8th Cir. 2003) (per curiam); *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993). But in none of these cases did the court consider the difference in language between the two statutes. None of the five cases contains a *considered* holding on the scope of the Fair Housing Act in general or its application to a case like the present one in particular.

Title VII protects the job holder as well as the job applicant, so an employer who resorts to harassment to force an employee to quit is engaged in job discrimination within the meaning of the Act. See, e.g., *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744-45 (7th Cir. 2002). The Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but *access* to housing. Bernard Schwartz, *Statutory History of the United States: Civil Rights Part II* 1709-17, 1742-51, 1762, 1769 (1970); *Hearings before the Subcomm. on Housing & Urban Affairs of the S. Comm. on Banking & Currency on S. 1358, S. 2114, and S. 2280*, 90th Cong., 1st Sess. (1967), *passim*; 114 Cong. Rec. S2274 (daily ed. Feb. 6, 1968) (statement of Sen. Mondale). Behind the Act lay the widespread practice of refusing to sell or rent homes in desirable residential areas to members of minority groups. Since the focus was on their exclusion, the problem of how they were treated when they were included, that is, when they were allowed to own or rent homes in such areas, was not at the forefront of congressional thinking. *That* problem—the problem not of exclusion but of expulsion—would become acute only when the law forced unwanted associations that might provoke efforts at

harassment, and so it would tend not to arise until the Act was enacted and enforced. There is nothing to suggest that Congress was trying to solve that future problem, an endeavor that would have required careful drafting in order to make sure that quarrels between neighbors did not become a routine basis for federal litigation.

Reference to legislative history is criticized when it is used to give a statute a reach that exceeds what its words suggest. Our use here is the opposite; it is to confirm that the words mean what they seem to mean.

So the plaintiffs have no claim under section 3604. And this might seem to doom their claim under section 3617 as well, because that section provides legal protection only against acts that interfere with one or more of the other sections of the Act that are referred to in section 3617, of which the only one even remotely relevant to this case is section 3604.

But this conclusion reckons without a regulation issued by the Department of Housing and Urban Development that in the name of section 3617 forbids among other things "threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons." 24 C.F.R. § 100.400(c)(2). The regulation cuts section 3617 loose from section 3604, contrary to the language of section 3617. Interference with "enjoyment of a dwelling," forbidden by the regulation, is something that can take place after the dwelling has been acquired, though we know that section 3604 is not addressed to post-acquisition discrimination. The regulation may stray too far from section 3617 (which remember is tied, so far as bears on the issues in this case, to section 3604) to be valid, though *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1304-05 and n. 43 (11th Cir. 1998),

the only appellate decision to address the issue, holds that it is valid. But the defendants have not challenged the regulation's validity and so its possible invalidity has been forfeited as a ground upon which we might affirm the district court. The defendants quote the regulation, but only to observe, quite mistakenly, that it "simply reiterates the language of section 3617." The entire point is that it does not. If it did, the defendants would be home free.

The remaining question is whether the conduct alleged in the complaint amounts to "threatening, intimidating or interfering" within the meaning of the statute and the regulation. The defendants argue that it does not, because it is far less ominous, frightening, or hurtful than burning a cross in a neighbor's front yard or assaulting the neighbor physically. But that cannot be the test. There are other, less violent but still effective, methods by which a person can be driven from his home and thus "interfered" with in his enjoyment of it. See, e.g., *Krueger v. Cuomo*, *supra*, 115 F.3d at 490-91 (sexual harassment); *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 43-44 (2d Cir. 2002) (economic pressure); *Walker v. City of Lakewood*, 272 F.3d 1114, 1126-31 (9th Cir. 2001) (same). Of course, to repeat an earlier point, we do not want, and we do not think Congress wanted, to convert every quarrel among neighbors in which a racial or religious slur is hurled into a federal case. But what is alleged in this case (as in the factually similar case of *Ohana v. 180 Prospect Place Realty Corp.*, 996 F. Supp. 238, 239 (E.D.N.Y. 1998)) is a *pattern* of harassment, invidiously motivated, and, because backed by the home-owners' association to which the plaintiffs belong, a matter of the neighbors' ganging up on them. We are far from a simple quarrel between two neighbors or the isolated act of harassment committed by the landlord in *DiCenso v. Cisneros*, *supra*, 96 F.3d at 1006.

The case is affirmed in part, but for the reasons just explained it is reversed with regard to the section 3617 charge, which we direct the district court to reinstate along with the state law claims, which the court dismissed only because it mistakenly believed that the complaint failed to state a federal claim.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*