# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-1197

LORRAINE C. EAST-MILLER,

*Plaintiff-Appellant*,

v.

LAKE COUNTY HIGHWAY DEPARTMENT
and MARCUS MALCZEWSKI,[*]

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 03 CV 175—**Rudy Lozano**, *Judge.*

———————

ARGUED JUNE 7, 2005—DECIDED AUGUST 31, 2005

———————

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Lorraine C. East-Miller asserts that Lake County, Indiana, through its highway department, discriminated against her in violation of her rights under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3631, and in violation of Indiana tort law. The district court granted summary judgment in favor of the defendants on

———————

[*] The caption used in the district court set out the real parties in interest: "County of Lake-Lake County Highway Department and Marcus Malczewski, in his capacity as Director of the Lake County Highway Department." This action was filed against them and judgment was entered in their favor.

the FHA claims and dismissed the state law claims without prejudice. We affirm.

## I. Background

In July 1997, East-Miller, together with her husband and four children, moved into a home in a cul-de-sac of a subdivision near Crown Point, in Lake County, Indiana. They were the only African-American family living in the subdivision. East-Miller alleges that discriminatory acts against her family began in the winter of 1997.

After a snowstorm in December 1997, East-Miller noticed that the family's mailbox was tilted and the wooden post was chipped. Although East-Miller's husband tried to straighten the post two different times, the mailbox fell to the ground a few days later. Neither East-Miller nor any member of her family saw the vehicle or person that caused damage to the mailbox.

The next winter, in 1998, East-Miller noticed that the mailbox had been hit again and that the flag was missing. East-Miller also claims that snow plows occasionally piled snow around her mailbox, causing it to lean. She alleges that similar incidents occurred in the winter of 1999, although she could remember no details. East-Miller's husband testified that their neighbor, Mr. Good, saw a snow plow strike the Miller family's mailbox sometime in 1998 or 1999.

After the mailbox was damaged the second time, presumably in 1998, East-Miller complained to the Lake County highway department and stated her belief that the mailbox had been struck because of her race. The director of the highway department, Marcus Malczewksi, ordered an investigation but found that there was no validity to the allegation of racial discrimination because the incident was an accident.

The next incident occurred on December 12, 2000, when East-Miller claims to have seen a highway department truck push snow into her driveway and against the garage door. She took photographs of the snow piles and the visible tracks from the plow, but claims to have misplaced them and was unable to produce them during discovery. East-Miller says there were one or two more incidents between December 12, 2000, and the time she filed this complaint in May 2003, but she acknowledged that the highway department tried to stay away from her mailbox by clearing snow in a different way. She noticed also that a patch of snow was cleared off in a grassy place in her yard and that there was a hole next to her mailbox. She attributes these occurrences to the highway department, but admittedly has no proof that the county agency was involved.

Finally, East-Miller alleges that on several occasions, while the highway department trucks were plowing her street, headlights would shine into her bedroom window. Neither East-Miller nor her husband were able to show that the lights were intentionally shined into the house and they admitted the possibility that the drivers were stopped doing paperwork or some other legitimate job-related task.

According to highway department policy, if a snow plow strikes a mailbox, the driver is to call the dispatcher and report the incident. The damaged mailbox should be repaired or replaced within a day. East-Miller's mailbox was repaired two times by the county and she hired a contractor to repair the damage four other times. The repairs sometimes took 2-3 weeks and caused mail service to be disrupted. Highway department policy prohibits pushing snow into driveways and headlights should not be shined into windows.

It is on this factual record that we consider the merits of the case.

## II.  Analysis

We review *de novo* the district court's grant of summary judgment. *See Lamers Dairy Inc. v. USDA*, 379 F.3d 466, 472 (7th Cir. 2004). Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We view the facts in the light most favorable to East-Miller, the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that "might affect the outcome of the suit" under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Lake County has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. However, East-Miller retains the burden of producing enough evidence to support a reasonable jury verdict in her favor. *See id.* at 256. "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

East-Miller's claim arises under § 3617 of the FHA, which provides:

It shall be unlawful to coerce, intimidate, threaten, or

> interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Sections 3603-3606 prohibit discrimination in the sale or rental of property and are not at issue in this case. East-Miller alleges only that the highway department violated § 3617 when the snow plow drivers interfered with her enjoyment of her property, post-purchase.

This court recently suggested that § 3617 can be violated even if §§ 3603-3606 are not implicated. *See Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004). The holding in *Halprin* was based on 24 C.F.R § 100.400(c)(2), which interprets the FHA and forbids "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons." Because interference with the "enjoyment of a dwelling" can take place at any time, this regulation extends the protections of the FHA to post-purchase discrimination.[1]

East-Miller parses the language of the statute and finds that there must be three different situations when § 3617 will apply; it is "unlawful to coerce, intimidate, threaten, or interfere with any person": (1) "in the exercise or enjoyment of" any right protected by §§ 3603-3606, (2) on account of

---

[1] *Halprin* left open the question of whether this regulation was valid, stating that "the regulation may stray too far from section 3617. . . ." *Halprin*, 388 F.3d at 330. In *Halprin*, as here, neither party questioned the validity of the regulation "and so its possible invalidity has been forfeited[.]" *Id.*

her "having exercised or enjoyed" such a right, or (3) on account of her "having aided or encouraged any other person in the exercise or enjoyment of" such a right. She alleges that she fits into the second category because she had the right to move into a house in an all-white neighborhood and, because she "exercised or enjoyed" this right, the highway department interfered with her. She further explains, "there is no need to show a racial animus in § 3617 cases challenging actions that are directed at someone, like the plaintiff here, because she exercised her right under the FHA to move into a house and live in an all-white neighborhood."

This court has not explicitly delineated what a plaintiff must show in order to present a prima facie case of discrimination under § 3617. East-Miller argues that she should only be required to show "(1) that she is in a protected class; (2) that she owned, or leased, a dwelling and was living in it; and (3) that she was threatened, intimidated or interfered with in the enjoyment of her house." She contends that she need not present proof of intentional discrimination or racial animus to avoid summary judgment. We disagree and find that the district court's assessment of the proper elements of a prima facie case are more in line with existing caselaw and common sense.

Judge Lozano found that in order to prevail on a § 3617 claim, the plaintiff must show that "(1) [s]he is a protected individual under the FHA[ ], (2) [s]he was engaged in the exercise or enjoyment of [her] fair housing rights . . ., (3) Defendants were motivated in part by an intent to discriminate, or their conduct produced a disparate impact, and (4) Defendants coerced, threatened, intimidated, or interfered with Plaintiff on account of [her] protected activity under the FHA[ ]." A number of district courts have, appropriately we believe, adopted such an approach. *See Grubbs v. Hous. Auth. of Joliet*, No. 91 C 6454, 1997 WL 281297, at *25 (N.D. Ill. May 20, 1997) (citing *People Helpers Found. v.*

*City of Richmond*, 789 F. Supp. 725, 732 (E.D. Va. 1992)). We hold that a showing of intentional discrimination is an essential element of a § 3617 claim. *Cf. Halprin*, 388 F.3d at 330 (requiring "a pattern of harassment, invidiously motivated"); *see also Walton v. Claybridge Homeowners Assoc., Inc.*, No. 1:03-CV-69-LJM-WTL, 2004 WL 192106, at *8 (S.D. Ind. Jan. 22, 2004) (stating that the plaintiff "will have to provide sufficient evidence that the conduct was racially-motivated to survive at summary judgment"); *Marthon v. Maple Grove Condo. Assoc.*, 101 F. Supp. 2d 1041, 1050 (N.D. Ill. 2000).

East-Miller has met the first two elements of her prima facie case: she is African-American and she exercised her fair housing rights by purchasing a house in a white neighborhood. In order to prove the third element, intentional discrimination, East-Miller "may establish that [the Lake County highway department] had a discriminatory intent either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method known as the *McDonnell Douglas* test." *Kormoczy v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 53 F.3d 821, 823-24 (7th Cir. 1995). There is also a question as to whether the conduct East-Miller alleges, even viewed in the light most favorable to her, "rose to the level of coercion, intimidation or interference that § 3617 was designed to address." *Walton*, 2004 WL 192106, at *5.

The district court found that East-Miller failed to show that the highway department's alleged actions were discriminatory. We agree that she provided no direct evidence of intentional discrimination. *See, e.g.*, *Kormoczy*, 53 F.3d at 824 ("Direct evidence is that which can be interpreted as an acknowledgment of the defendant's discriminatory intent."). The highway department did not acknowledge discriminatory intent in its dealings with East-Miller; in fact, there is no evidence that the drivers who allegedly damaged East-Miller's mailbox even knew that she was African-American.

Also, unlike cross-burning or name-calling, one cannot infer race discrimination from the substance of the alleged actions—damaging the mailbox four or five times in a six-year period, pushing snow into the driveway, and head-lights shining in windows are not methods traditionally used to force minority families out of predominantly white neighborhoods.[2]

East-Miller also attempted to prove discrimination through the indirect burden-shifting method set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). However, she failed to "construct[ ] a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination[.]" *Grimm v. Alro Steel Corp.*, 410 F.3d 383, 385 (7th Cir. 2005) (internal quotations and ciations omitted). East-Miller's argument goes as follows: (1) she is African-American; (2) the other families in her neighborhood are not; (3) her mailbox was damaged by snow plows on several occasions, snow was pushed into her driveway, and headlights shined in her window; (4) none of these things happened to her neighbors; (5) therefore, it must be true that the highway department discriminated against her in violation of the FHA because she is African-American. She further explains, "[g]overnment actors who engage in acts of intimidation and interference, while they are supposed to be providing services such as snow removal from the streets, send a very clear message to members of the only African-American family in the subdivision that they are not wanted, particularly when that message is not

---

[2] Of course, cross-burning and racial slurs are not necessary for an actionable FHA claim; "there are other, less violent but still effective, methods by which a person can be driven from his home and thus 'interfered' with in his enjoyment of it." *Halprin*, 388 F.3d at 330 (collecting authority). We mention cross-burning here only to give an example of an action that might be inter-preted as direct evidence of intentional race discrimination.

sent to the white families."

East-Miller does not provide enough circumstantial evidence to allow a jury to infer intentional discrimination. She claims that she saw a highway department plow push snow into her driveway and that it was a similar vehicle that shined its headlights into her home. Her husband said that a neighbor saw a highway department truck run into her mailbox one time. She attributes the other incidents to the highway department, but admittedly has no proof that the county agency did the damage. Although at least two Lake County highway department employees had face-to-face meetings with the family—East-Miller met with an investigator and her husband confronted one driver—she did not prove that those who damaged her mailbox even knew the family's race. It is true that there is no good explanation for pushing snow into the driveway, but there is also no good reason to infer that it was done because of East-Miller's race. Inferring race discrimination from these minor incidents, most of which may not have even involved the highway department and could easily have been accidental, requires a huge inferential leap that we will not take. These incidents may have inconvenienced East-Miller, but she did not "present evidence from which a jury might return a verdict in [her] favor*." See Anderson*, 477 U.S. at 256. East-Miller did not offer evidence showing intentional discrimination, therefore she cannot prove a violation of her fair housing rights under § 3617. Summary judgment was properly granted to Lake County and Malczewski.

Even if East-Miller had adequately shown a genuine issue of material fact regarding intentional race discrimination, she would have also had to show that "the conduct alleged in the complaint amounts to 'threatening, intimidating or interfering' within the meaning of the statute and the regulation." *Halprin*, 388 F.3d at 330. We question whether the actions here were frequent and severe enough to give rise to an FHA claim, but need not discuss this issue

further in light of our resolution of the case.

The district court properly dismissed East-Miller's state law tort claims without prejudice because the federal claims were dismissed on summary judgment. *See* 28 U.S.C. § 1367(c); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

### III.  Conclusion

For the reasons explained above, we AFFIRM the grant of summary judgment in favor of the County of Lake-Lake County Highway Department and Marcus Malczewski. We also AFFIRM the dismissal without prejudice of the state law tort claims.

A true Copy:

　　　　Teste:

　　　　　　　　　　　　_____
　　　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　　　*Appeals for the Seventh Circuit*