SAVANNA CLUB WORSHIP
SERVICE, INC.,
Plaintiff,

v.

SAVANNA CLUB HOMEOWNERS'
ASSOCIATION, INC., et al.
Defendants.

No. 0414345CV.

United States District Court,
S.D. Florida.

Dec. 16, 2005.

David Charles Gibbs, III, Gibbs & Craze, Seminole, FL, for Plaintiff.

Danielle K. Brewer, Becker & Poliakoff, West Palm Beach, FL, Daniel S. Rosenbaum, West Palm Beach, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon the Defendants' Motion for Summary Judgment (DE 85) and Plaintiff's Response and Cross–Motion for Summary Judgment (DE 87). The Court has reviewed the Motions, the responses thereto, and is otherwise fully informed of the premises. The Court heard oral argument on the Motion(s) on December 8, 2005 (the "Hearing").

### INTRODUCTION

This suit involves the question of the relationship between a homeowners' association's right to control activities within its community and the Federal Fair Housing Act, 42 U.S.C. 301 *et seq.*, and the Florida Fair Housing Act., 760.20 *et seq.* ( hereinafter referred to jointly as the "FHA").[1] The Savanna Club Worship Service, Inc. (the "Club") is a religious organization comprised of individual homeowners in the Savanna Club home community ("Savanna"). The gravamen of the Complaint is that the Club has historically conducted its religious services in Savanna's club house or common areas, but that the Savanna Homeowner's Association (the "Association") recently adopted a rule which disallows anyone from conducting "religious services" in any of Savanna's common areas (the "Rule"). The Club alleges that the Rule discriminates against the Club based upon religion and, therefore, violates the FHA.

### LEGAL STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," FED. R. CIV. P. 56(c). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof t trial, summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hilburn v. Murata Elecs. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir.1999). Thus, the task is to determine whether, considering the evidence in the light most favorable to the non-moving party, there is evidence on which the trier of fact could reasonably find a verdict in her favor. *See Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505; *Hilburn*, 181 F.3d at 1225; *Allen v. Tyson*

---

1. Under Florida law, discrimination covered under the Florida Fair Housing Act is the same discrimination as is prohibited under the Federal Fair Housing Act.

*Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The facts of this case are undisputed, and the Parties agree that the issues involved herein are purely issues of law amenable to summary judgment disposition.

### FACTUAL BACKGROUND

The following facts are undisputed.[2] The Association is a non-profit corporation organized under the laws of the State of Florida and governed by Florida's Homeowner's Association Act, Fla. Stat. 720.301, *et seq.* Its membership consists of individual Savanna homeowners. The Club is a non-profit Florida corporation, organized by various homeowners. Its purpose is to provide worship services for residents of the Association's community. The Club is not itself a homeowner in the community, nor a member of the Association. Until sometime in mid 2004, the Club conducted its religious services within Savanna's club house or other common areas.

The Association received numerous complaints from its non-Club members regarding the use of Savanna's common areas for religious services. One of the reasons for the complaints was that such usage was contrary to the areas' stated purpose of being "devoted to the common use, recreation and enjoyment of the members of the Association." The Declaration of Covenants and Restrictions for Savanna provides that "[t]he areas designated as [common] areas ... shall be used for no other purpose than as open and recreational areas." After receiving the complaints, the Association conducted a straw poll of the residents, and determined that the majori-ty of residents did not like the common areas being used for religious services. Accordingly, in July of 2004, the Association adopted the Rule being challenged here which stated that "No portion of the common areas of Savanna Club may be used for any religious service." The rule took effect on or about August 14, 2004 and has been recorded into the Public Records for St. Lucie County.[3]

Prior to enacting the Rule, the Association had permitted the Club to hold its meetings in various Savanna common areas for the specific purpose of conducting religious services. After Association enacted the Rule, the Club continued to schedule and hold its meetings in the community's common areas.[4] Savanna filed a Petition for Mandatory Mediation before the state of Florida Land Sales, Condominiums and Mobile Homes in November of 2004.[5] Mediation was held. The Club subsequently stopped holding its religious services in the common areas. It is undisputed that the Association has uniformly and equally applied this Rule to all religious groups. It is also undisputed that the Club is not a member of the Association, nor a homeowner within Savanna.

### Analysis

Both Parties agree that the only issue before the Court is whether or not the Rule, which is equally enforced against all religions, violates the FHA. Specifically, does Savanna's religion-based prohibition violate 42 U.S.C. 3604(b), which provides, in pertinent part, that it is unlawful "[t]o discriminate against any person in the

---

**2.** The facts are taken from the Joint Pre–Trial Stipulation filed on November 30, 2005.

**3.** After the adoption of this rule, the Association's membership amended the Association's Bylaws to reflect that all religious services would be banned from the community's common areas.

**4.** It is undisputed that the Club was fully aware of the Rule's enactment when it held such meetings.

**5.** Case NO.2004–05–5989.

terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin?"

The Court notes that the Club, in its response to Defendants' Motion for Summary Judgment raises a claim under 42 U.S.C. 3604(c) for the first time, which provides, in pertinent part, that it is illegal for anyone to "make print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation or discrimination based on . . . religion." The Court notes that the Club failed to seek leave to amend the original complaint to include a 3604(c) claim. Additionally, the Club untimely filed its Cross–Motion after the deadline for filing pre-trial dispositive motions previously set by the Court had passed, and without seeking leave of Court to do so. Accordingly, the Court declines to address the merits of the untimely claim.[6]

The Complaint originally asserted five counts:(I) Violation of the Federal Fair Housing Act; (II) Violation of the Florida Fair Housing Act; (III) Violation of the Savanna Club Bylaws; (IV) Breach of Contract; and (V) Declaratory Relief. The Parties have agreed to dismissal of Counts III and IV, leaving claims I, II and V. In its Motion for Summary Judgment, the Association asserts that dismissal is proper because the Club has no standing to sue as an "aggrieved person" under the FHA[7] The Club counter's that it has standing both on its own and under the concept of associational standing because it represents the interests of its members, many of them Savanna homeowners and members of the Association.

■ An "Aggrieved Person," under the FHA, includes any person who claims to have been injured by a discriminatory housing practice, or believes that such person will be injured by a discriminatory housing practice that is about to occur. In order to establish that a plaintiff is an "Aggrieved Person," it must demonstrate that it has suffered a concrete injury in fact or one that is actual and imminent; that such injury is fairly traceable to Defendants' allegedly illegal actions; and that it is likely that such injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1537 (11th Cir.1994); *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 93 S.Ct.364 34 L.Ed.2d 415 (1972).

■ Defendant asserts that because the Club is not a member of the Association it is not entitled to holding any meeting in Savanna's common areas at all, and that this means that it cannot be an "aggrieved person" as contemplated by the FHA. In response, the Club alleges that the Association's Rule has denied it and its members the right to hold meetings solely based upon the religious aspects of its meetings. It further alleges that the Association permits other groups to meet freely, and that a favorable decision by this Court would benefit it directly. The Court can dispose of this issue quickly. It is well established that standing under the FHA is as broad as the Constitution's minimum case or con-

---

**6.** The Court also notes that it questions the merits of Plaintiff's cross-motion, and that Plaintiffs presented no evidence or argument supporting the 3604(c) claim during the Hearing.

**7.** Defendants also assert that if the Court finds that the first two Counts of the Amended Complaint are due to be dismissed, then Count V's claim for declaratory relief must fail due to an absence of any actual controversy.

troversy requirements. *See Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Baytree of Inverrary Partners v. City of Lauderhill,* 873 F.2d 1407, 1409 (11th Cir. 1989). Accordingly, the Court finds that Plaintiffs have established FHA standing under these facts.

Finding that the Club has standing to sue as an aggrieved person, the Court turns to Defendant's next assertion in support of summary judgment. That assertion is that the FHA does not reach the challenged Rule because a homeowner's association's restrictions regulating the use of its common areas are not a "provision of service" in connection to the sale or rental of a dwelling as contemplated by the FHA. Specifically, Defendant's assert that the Rule is a general regulation prohibiting all religious services in the common areas, and so it does not discriminate against any one particular religion. Plaintiff counters that the Rule, despite affecting all religions equally, is specifically targeted at them and is discriminatory on its face as it literally prohibits religious services, thereby treating religious groups differently than non-religious groups.

In the public forum/First Amendment context, it is well established that rules such as the one herein has been found to be discriminatory on its face. *See Good News Club, et al. v. Milford Central School,* 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001); *Lamb's Chapel v. Center Moriches Union Free School District,* 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993). Addressing a virtually identical rule, the Supreme Court has held that once a state opens up a forum for limited public use, it may regulate the use of such forum, but may not engage in viewpoint discrimination. *Id.*

*Good News* and *Lamb's Chapel,* dealt with the issue of whether or not a state, or an institution thereof, could prohibit all religious groups from meeting in its facilities while opening the same facilities for use by any group with non-religious purposes. The Supreme Court held that when a state creates a limited public forum, it engages in viewpoint discrimination in violation of the First Amendment when it prohibits religious groups from accessing such forums purely because of their religious content. Under this public forum analysis, it would initially appear that the challenged Rule constitutes de facto discrimination.

However, *Good News* and *Lamb's Chapel* involved First Amendment Challenges against actions fairly attributable to governmental state actors. It is undisputed that this case does not involve any state action. Accordingly, the question which needs to be solved is whether or not, in the absence of any state action or public forum, the Rule is discrimination under the FHA. Is the FHA's protection as broad as under traditional First Amendment analysis? Does it reach all private discrimination in the absence of state action? These are serious questions, and the Court declines to extend these constitutional principals to FHA analysis absent some legal basis to do so. *See Loren v. Sasser,* 309 F.3d 1296, 1303 (11th Cir.2002)(holding that actions by a homeowner's association did not constitute state action). *See also Sofarelli v. Pinellas County,* 931 F.2d 718 (11th Cir.1991). Considering the facts involved in this case, and for the reasons that follow, the Court believes that these questions must be answered in the negative.

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." The FHA does

not define, and the Eleventh Circuit has not addressed, the issue of what constitutes "discrimination . . . in the provision of services." A majority of courts considering the issue have found that Section 3604(b) is limited to discrimination in provision of services as they are connected to the acquisition or sale and rental of housing. *See, Cox v. City of Dallas Texas*, 430 F.3d 734. *See also, Woods–Drake v. Lundy*, 667 F.2d 1198 (5th Cir.1982);*Lawrence v. Courtyards at Deerwood Ass'n., Inc.*, 318 F.Supp.2d 1133 (S.D.Fla.2004); *Walton v. Claybridge Homeowners Ass'n., Inc.*, 2004 WL 192106 (S.D.Ind.2004); *United States v. Weisz*, 914 F.Supp. 1050, 1054 (S.D.N.Y.1996); *Halprin v. Prairie Single Family Homes* 388 F.3d 327 (7th Cir.2004); *Clifton Terrace Assocs. v. United Techs. Corp.*, 929 F.2d 714, 720 (D.C.Cir.1991); *Laramore v. Ill. Sports Facilities Auth.*, 722 F.Supp. 443, 452 (N.D.Ill.1989); *Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc.*, 276 F.Supp.2d 1222 (M.D.Fla.2003).[8]

■ Most of those same courts have interpreted this to mean that this provision is not applicable to post-acquisition discrimination in the provision of services, unless the discrimination somehow deprives a person of their housing. This definition has resulted in the conclusion that, if the challenged discriminatory activity occurs after a buyer has already purchased his or her home, and if such activity is not one which results in either an actual or constructive deprivation of that property, then such activity is not prohibited by the FHA. *See, e.g., Halprin*, 388 F.3d 327 (7th Cir.2004)(*aff'd* in part, *rev'd* in part, 388 F.3d 327(7th Cir.2004))(affirming the lower courts determination as to the applicability of 3604(b)). The Associa-

tion claims that its Rule is not connected with the acquisition, sale or rental of housing, and so it cannot be a violation under the FHA's anti-discrimination provision. The Association's argument seems to be that "services" under 3604(b) do not include "Rules, policies, or practices of a homeowner association," and that the "FHA was passed to ensure fairness and equality in housing . . . not to become some all purpose civility code regulating conduct between neighbors." *Gourlay*, 276 F.Supp.2d at 1232–34. Further, "the Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but *access* to housing." *Cox*, 430 F.3d 734 (emphasis added). In other words, according to the Association, the FHA does not prohibit certain private discriminatory activities unless such activities somehow hinder a persons ability to obtain housing, either directly, or constructively. The Seventh Circuit, in deciding *Halprin*, discussed the legislative history of the FHA and found that it was geared at preventing discrimination in the context of sale or acquisition of housing only, and that Congress never intended for it to become a catch all anti-discrimination law. *Halprin*, 388 F.3d at 330 ("we do not think that Congress wanted, to convert every quarrel among neighbors in which a racial or religious slur is hurled into a federal case"). In *Halprin* two Jewish homeowners sued their homeowners' association for the association's alleged collusion with other homeowners in engaging in religious discrimination against them.[9] The Seventh Circuit found 3604(b)'s discrimination in the provision of services provision to be inapplicable for complaints of post-sale discrimination. As stated earlier, many of the courts of appeals which

---

8. After the *Gourlay* decision was issued, the parties settled and the court withdrew the opinion. The order's reasoning and analysis, however, remains instructive and persuasive.

9. The Complaint alleged that the association hindered plaintiffs efforts to identify the person responsible for defacing their property with religious slurs.

have addressed the issue agree with the *Halprin* outcome. . *See e.g., Cox v. City of Dallas Texas* 430 F.3d 734; *Woods–Drake v. Lundy,* 667 F.2d 1198 (5th Cir.1982);*Lawrence v. Courtyards at Deerwood Ass'n., Inc.,* 318 F.Supp.2d 1133 (S.D.Fla.2004); *Walton v. Claybridge Homeowners Ass'n., Inc.,* 2004 WL 192106 (S.D.Ind.2004); *United States v. Weisz,* 914 F.Supp. 1050, 1054 (S.D.N.Y.1996); *Halprin v. Prairie Single Family Homes* 388 F.3d 327 (7th Cir.2004); *Clifton Terrace Assocs. v. United Techs. Corp.,* 929 F.2d 714, 720 (D.C.Cir.1991); *Laramore v. Ill. Sports Facilities Auth.,* 722 F.Supp. 443, 452 (N.D.Ill.1989); *Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc.,* 276 F.Supp.2d 1222 (M.D.Fla.2003).

■ The Association relies on cases like *Halprin* and appear to request that the Court find that they create a bright-line rule which holds that the FHA does not reach any post-acquisition discrimination. However, the Court does not agree with such a broad reading of *Halprin,* and this interpretation certainly cannot apply to unique planned communities such as Savanna. Ordinarily, a homeowner purchases a home for the home itself. After the sale, provision or lack of provision of services for that homeowner might decrease his enjoyment of his home, but absent some interference with his ability to inhabit it, the *Halprin* line of cases have found the FHA to be inapplicable. *See e.g., Lawrence v. Courtyards at Deerwood Ass'n.,* 318 F.Supp.2d 1133, 1143 (S.D.Fla.). *Halprin,* and other similar cases, however, did not directly address the provision of services as they relate to planned communities where some types of services are in fact part and parcel with home ownership.[10]

In Florida, planned communities such as Savanna are governed by Florida's Homeowner's Association Act (the "Florida Act").[11] The Florida Act defines the word "'Community' to mean the real property that is or will be subject to a declaration of covenants which is recorded in the county where the property is located." Fla. Stat.720.302. A buyer purchases a home within such a community subject to the community's applicable declaration of covenants.[12] Florida's Homeowner's Association Act. gives statutory recognition to not for profit corporations "that operate residential communities in [Florida], to provide procedures for operating homeowners' associations, and to protect the rights of association members without unduly impairing the ability of such associations to perform their functions."[13]

Most of these communities have common areas which are maintained and regulated by the community's homeowner association for use by the homeowner

---

**10.** Actually, *Halprin* involved a suit against a homeowner's association, but the court found that enforcement of restrictive covenants was not a provision of services as contemplated by 3604(b). The court did find that Section 3617 which prohibits threatening, intimidating, or interfering with a person *in the enjoyment* of their dwelling could be applicable. The Court found this language could support post-acquisition application of the FHA under 3617.

**11.** 721.301, *et seq.*

**12.** Under the Act, a

"Declaration of covenants," or "declaration," means a recorded written instrument in the nature of covenants running with the land which subjects the land comprising the community to the jurisdiction and control of an association or associations in which the owners of the parcels, or their association representatives, must be members.
Fla. Stat. 720.301(4).

**13.** Florida condominiums are similarly statutorily created and have almost identical provisions in the Florida Condominium Act. *See* Fla.Stat. 718.101, *et seq.*

members. The Act defines the common areas as:

all real property within a community which is owned or leased by an association or dedicated for use or maintenance by the association or its members, including, regardless of whether title has been conveyed to the association:

(a) Real property the use of which is dedicated to the association or its members by a recorded plat; or

(b) Real property committed by a declaration of covenants to be leased or conveyed to the association.

Fla. Stat. 720.301(2).

Accordingly, part and parcel of the purchase of a home within a planned community are the rights and privileges associated with membership within the community. It would appear, therefore, that in the context of planned communities, where association members have rights to use designated common areas as an incident of their ownership, discriminatory conduct which deprives them of exercising those rights would be actionable under the FHA. *See, Massaro v. Mainlands Section 1 & 2 Civic Association*, 3 F.3d 1472 (11th Cir.1993). HUD has promulgated a regulation supporting this interpretation. It defines "Discrimination in terms, conditions and privileges in services and facilities." It provides, in pertinent part, that prohibited actions under 3604(b) include "limiting the use of privileges, *services or facilities associated with a dwelling* because of ... religion ... of an owner." 24 C.F.R. § 100.65(b)(4)(emphasis added).

This regulation uses the term "associated with a dwelling," not "related to the sale thereof." This distinction makes sense given the unique nature of planned community home ownership. It is also not contradictory to the *Halprin* type line of cases. Under this Regulation, if an association member was completely denied access to a clubhouse or other common area because they were Jewish or of another religion, such denial would clearly be a deprivation of full use of the incidents of ownership actionable under the FHA. *See e.g. Landesman v. The Keys Condominium Owners Association*, 2004 WL 2370638 (N.D.Cal.2004); *Halprin*, 388 F.3d at 330; *Paradise Gardens*, 1992 WL 406531, *aff'd*, 8 F.3d 36 (11th Cir.1993); *Fair Housing Congress v. Weber*, 993 F.Supp. 1286 (C.D.Cal.1997).

With this distinction in mind, the Court turns to the Club's allegations. It does not allege that any of its individual Savanna homeowners have been unable to utilize Savanna's common areas for any purpose other than conducting religious services. Nor does it assert that the Association has prevented its members from engaging in their religious observance in their homes. It is undisputed that the Rule bans any and all religious services regardless of denomination, and that the Rule is imposed equally among all religions. Therefore, the crux of the claim is that the Club's members, who are fully entitled to assemble in Savanna's common areas for any non-religious purposes, are illegally being treated differently than other members who choose to assemble for non-religious purpose, and that such disparate treatment is a religion-based discrimination in the provision of services under the FHA.[14]

The case of *Neuman v. Grandview at Emerald Hills, Inc.* is a remarkably similar case.[15] In *Neuman*, a condominium association enacted a rule which was virtu-

---

**14.** Plaintiff makes a "public forum" type of an argument requesting the Court to extend traditional public forum concepts discussed *supra* page 1226–27 to actions under the FHA.

**15.** 861 So.2d 494.

ally identical to the one challenged here. The Rule provided that "no religious services or activities of any kind are allowed in the auditorium or any other common elements." Condominium owners sued the condominium association for violating their rights to peaceably assemble and asserted that the association permitted other groups to utilize the auditorium and other common elements provided that they were not being used for any religious services or activities.

The *Neuman* court held that condominium ownership and residency is unique in that condominium owners agree to "for the good of the majority, restrict[ ] rights residents would otherwise have were they living in private separate residence." *Neuman*, 861 So.2d at 497. The court discussed the nature of this relationship and found it to involve a sort of *quid pro quo* where unit owners give up certain of their fee rights, hand over the regulation of the units to an association in order to best maintain the entire community. In exchange, unit owners know that their neighbors will maintain their property in a suitable fashion, and that the common areas will be kept in proper order for the use and enjoyment of all the residents.

Inherent in this relationship then is the concept that certain "provision of services" are associated with home ownership within these type of communities as contemplated by the HUD Regulation, and so complete deprivation of these services, even post-acquisition, would be addressable under the FHA.

*Neuman* did not involve an FHA challenge. It involved a challenge under the condominium owner's statutory right to peacefully assemble,[16] but despite this, and because the Condominium Act and the Homeowner's Association Act are virtually identical, the Court finds the case some-

what instructive. The *Neuman* court discussed the concept of contractual residential living arrangements in the context of condominiums, but under the FHA, planned community residential relationships are virtually identical in that they are intended "[to] promote the health, happiness, and peace of mind of the majority of ... owners since they are living in such close proximity and using facilities in common, each ... owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property." *Id.* at 497. A homeowner purchasing a home subject to these types of covenants knowingly gives up some rights to gain certain desired services not ordinarily associated with the purchase of a single home. The Court is inclined to find that *Neuman* applies to these facts, but as it did not address an FHA challenge, and as the Court finds that the FHA can apply to some post-acquisition provision of services in the planned community context where the services are an incident of ownership, I now turn to evaluation of the Club's discrimination claim.

Discrimination claims under the FHA are subject to the Title VII *McDonnell Douglas Corp. v. Green*, burden-shifting analysis. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Massaro v. Mainlands Section 1 & 2 Civic Ass'n., Inc.*, 3 F.3d 1472, 1476 n. 6 (11th Cir.1993); *Secretary, HUD . on Behalf of Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir. 1990); *Mitchell v. Shane*, 350 F.3d 39 (2nd Cir.2003). Under this test, a plaintiff first bears the burden of establishing that the defendant has engaged in discrimination. Once that is done, the burden then shifts to the defendant to establish a legitimate non-discriminatory business reason for taking the action. If the defendant comes

---

**16.** Fla. Stat. 718.106(4). The Florida Act has an identical provision at Fla. Stat. 720.304(1).

forth with such reason, then the burden returns to the plaintiff to establish that the defendant's reason is merely a pretext. *Id.*

Adapted to the facts in this case, this standard requires the Club to establish: (1) that it is an aggrieved party; (2) that it has suffered an injury because of the alleged discrimination; and (3) that, based on religion, it was denied provision of services protected by the FHA which were available to other homeowners. *See Secretary, HUD,* 908 F.2d at 870; *Landesman v. Keys Condominium Owners Association,* 2004 WL 2370638 (N.D.Cal.2004). As discussed earlier, the Club has established that it is an aggrieved party. It also has established that the Club has in fact suffered an injury. It's claim must fail, however, because it has not established the third prong—that it was denied access to use of facilities or common areas available to other homeowners based upon religion as contemplated by the FHA.

None of the Club's homeowners have been denied access to Savanna's common areas. Rather, they have been denied permission to use the common areas to conduct their religious services. Just as clear is the fact that no other homeowner is permitted to conduct their religious services within Savanna's common areas. Applying the reasoning of the majority of Courts that have considered post-acquisition discrimination, their interpretation of the FHA's policy as being intended to provide access to housing, and further applying the relevant HUD Regulation and the few cases finding access to planned community facilities an incident of ownership, the Court finds that the FHA only applies to those deprivations in the provision of services which cause a complete denial of access to such services. The Application of a Rule barring all religious services from a community's common areas without impeding a homeowner's right to practice his or her religion, and without denying access to the common areas for all other purposes is not sufficient to established that the club is being treated differently from persons of other religions.

The fact that it is more desirable or easier for Club members to practice their religion in Savanna's common areas, does not make their current or future homes unavailable as contemplated by the FHA. *See Tenafly Eruv Ass'n., Inc. v. Borough of Tenafly,* 309 F.3d 144 (3rd Cir.2002). In *Tenafly,* orthodox Jewish plaintiffs wanted to construct an eruv.[17] The court held that the FHA does not protect against Rules which merely make living in an area less desirable. I believe that expanding the FHA as the Club suggests is unwarranted, and could "create an FHA claim in every circumstance where a religious group is denied a request to use . . . property to make an area more appealing for the private practice of their religion." *Id.* The Court finds that the challenged Rule does not make the Club's homes unavailable as contemplated by the FHA. Accordingly, the Court finds that it is unlikely that the challenged Rule violates the FHA's discrimination in the provision of services provision, and that summary judgment is appropriate.

 However, even if it could fairly be said that the challenged Rule discriminates based on religion under the FHA, the

---

**17.** A symbolic border around a neighborhood. The border is created by attaching religiously significant items called lechis to utility poles surrounding the neighborhood. Orthodox Jews are ordinarily prohibited from engaging in pushing or carrying items outside the home on the Sabbath. Within the eruv, orthodox jews are considered "inside the home" for observance purposes and therefore permitted to push items such as wheelchairs which enables disabled members to attend services.

claim must still fail. If a plaintiff establishes a prima facie case of discrimination, then the burden shifts to the defendant to offer a legitimate non-discriminatory reason for the conduct. So, even if the Club could establish the discrimination prong of the *McDonnell Douglas* test, the Association has come forth with a legitimate business reason for enacting the Rule. The Parties in their Joint Pre–Trial Stipulation agreed that the challenged Rule was adopted for numerous reasons including repeated complaints about the use of the common areas from non-Club Association members, various violations of the existing Rules and regulations including the use by non-Association members who attended the Worship Services of common areas and parking, violations of the Associations governing documents.[18] At the hearing, additional reasons were articulated and listed reasons were further explained. The members of the club each have a right to use the common areas. All of the members have that right and have to pay a yearly fee for that right. The Club has a large membership and has impeded the rights of other members in their enjoyment of their facilities. The right to religious freedom must encompass the right to be free from religion. In this case, the Associations' members voted 714 to 434 to prohibit religious services in their common areas. Given these facts as well as the contractual *quid pro quo* nature of home ownership involved which requires acting with the majority good in mind, the Court finds that the Association has met its burden of setting forth a legitimate non-discriminatory basis for enacting the Rule.

This means that the burden is now upon the Club to establish that the articulated reasons are in fact a pretext for discrimination. The record is devoid of any evidence suggesting such a finding. Accordingly, the Court finds that the Club's claim must fail.

■ The Court now addresses one more aspect of the Club's claim in which they appear to assert that in applying traditional Title VII analysis as required, the Association has a duty to make a reasonable accommodation for it. In other words, the Association has failed to make a reasonable accommodation to the Club so that it can practice its religion, and that this is discrimination.

The difficulty with this is, however, that the FHA, unlike Title VII, imposes no "reasonable accommodation" requirement in the context of religious discrimination. Under Title VII it is an illegal employment practice to discriminate against an employee unless an employer demonstrates that he is "unable to accommodate ... [the] religious observance or practice without undue hardship on the conduct of [his] business." 42 U.S.C.2000e(j). The only "reasonable accommodation" requirement is found in the portion of the Act addressing discrimination against the handicapped. That section provides, in pertinent part, that "it shall be unlawful ... to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling ... because of a handicap .... *For the purposes of this subsection,* discrimination includes ... a refusal to make reasonable accommodations in Rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. 3604(f)(3)(B)(emphasis added).

Section 3604(f) was added in 1998 by PL 100–430, 1988 HR 1158. Congress would

---

**18.** Article IV of the Declaration of Covenants and Restrictions for the Association provides that the "areas designated as open or recreational areas on the general plan of development shall be used for no other purpose than as open and recreational areas."

not have needed to insert the reasonable accommodation language into section 3604(f) if it had already been encompassed by 3604(b). Nor would it have specified that a failure to make a reasonable accommodation by reason of handicap would constitute discrimination. The Court will not construe subsection 3604(f) to be mere surplusage. Rather, the Court holds that by omitting any such reasonable accommodation language from subsection 3604(b), Congress intended that there be no such requirement in the context of religious discrimination. *See Gourlay*, 276 F.Supp.2d at 1233.

After thorough consideration and for the reasons set forth above, the Court finds that the challenged Rule applying equally to all religions is not a violation of the FHA. Accordingly, it is

ORDERED and ADJUDGED that the Defendant's Motion for Summary Judgment (DE 85) be and is hereby GRANTED. Given Parties prior Motions to Dismiss Counts III and IV, the entire Complaint is hereby DISMISSED with PREJUDICE. If is further

ORDERED and ADJUDGED that the Plaintiff's Cross–Motion for Summary Judgment be DENIED. The Clerk of Court shall enter judgment in favor of Defendant and as against Plaintiff and DENY all PENDING MOTIONS as MOOT.