MAKAR, J.,
dissenting.
James Henkel, wheel-chair bound and without a lawyer, sought to correct problems with three doors (entry, pool, and dock) that impeded his access to public spaces at the condominium complex where he resides. In his petition to the Florida Commission on Human Relations, he asked that the access he previously enjoyed be restored. He specifically said he was not asking for modifications to the design/construction of the doors, only that access be restored by, for example, ensuring that the closers on entry doors meet push-weight requirements so that he can push on doors and enter as he did in the past (“Condo management refuses to readjust these door opening force settings to accessible levels despite our many complaints at board meetings and repeated letters.”).
After a hearing, the administrative law judge (ALJ) found that the entry doors were out of compliance with push weight standards but concluded that no actionable claim based on door pressures existed, relying on an Eleventh Circuit case, Harding v. Orlando Apartments, LLC, 748 F.3d 1128, 1132 (11th Cir. 2014). That case held that subsequent owners need not comply with design-and-construction standards, which don’t apply to owners other than those who initially designed and constructed the housing in question. Id. at 1134. Here, the ALJ also concluded that the pool door added by the current owners had been brought into compliance and that Henkel was not permitted access to the dock as a non-slip owner.
The Florida Commission on Human Relations rejected the ALJ’s recommendation, concluding that although the design and construction standards only applied to new additions (such as the pool door), the failure to maintain the standards for preexisting features (e.g., pressures for the closers on the entry door) was actionable, *757 citing to Question 21 in the Joint Statement of the HUD and DOJ:
21. May owners of covered multifamily buildings designed and constructed in compliance with the Fair Housing Act make subsequent changes to the building so that it no longer meets the Act’s requirements?
Original and subsequent owners of covered multifamily buildings that were designed and constructed in compliance with the Fair Housing Act’s design and construction requirements must maintain the building’s accessible features so that the building continues to meet the Act’s requirements,
(Italics added). Requiring subsequent owners to maintain a building’s original accessibility features makes sense; a gaping loophole would exist otherwise if subsequent owners could fail to maintain accessibility features such as door closers on the premise that doing so involves a modifying design or construction standards for which they aren’t legally responsible. Imagine if elevators/ramps aren’t maintained and became inoperable/impassible. This type of “failure to maintain” claim is neither novel nor extravagant. The Joint Statement is not the law—it’s only guidance—but courts have entertained such claims under the FHA. See, e.g., Mehta v. Beaconridge Improvement Ass’n, 432 Fed.Appx. 614, 616-17 (7th Cir. 2011) (“Under the FHA, a homeowner may sue a homeowners’ association if the association engages in invidious discrimination when failing to provide maintenance services or when limiting the use of privileges, services, or facilities associated with the homeowner’s dwelling.”); The Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 714 (9th Cir. 2009) (“In common parlance, issues relating to ‘maintenance or repairs’ or ‘services or facilities associated with a dwelling tend to be issues arising after the tenant or owner has come into possession of the dwelling and sought out maintenance, repair, or services.”); Cox v. Phase III, Invs., CIV.A. H-12-3500, 2013 WL 3110218, at *7 (S.D. Tex. June 14, 2013) (section 3604(a) of the FHA has been “construed this provision to prohibit ‘failing or delaying maintenance or repairs’ of the plaintiffs dwelling because of race”); Matarese v. Archstone Pentagon City, 761 F.Supp.2d 346, 363 (E.D. Va. 2011) (individual with chemical sensitivity asserted claim that “neutral policy of routine maintenance” with regular paints was discriminatory, but failed to present “evidence of the application of this policy on others” with her disability); Savanna Club Worship Serv., Inc. v. Savanna Club Homeowners’ Ass’n, Inc., 456 F.Supp.2d 1223, 1230 (S.D. Fla. 2005) (“[I]n the context of planned communities, where association members have rights to use designated common areas as an incident of their ownership, discriminatory conduct which deprives them of exercising those rights would be actionable under the FHA.”); Congdon v. Strine, 854 F.Supp. 355, 363 (E.D. Pa. 1994) (on a claim that building elevator not maintained, owner demonstrated that “he had a regular elevator maintenance contract” and had made other accommodations to claimant, thereby defeating the claims).
Keep in mind that Henkel was not asking the Association to redesign or replace the doors, only that they be maintained by adjusting the closers to appropriate push-weights, which is not a request for a structural alteration or modification for which he must pay. If he wanted wider doorways, which would require demolition and new construction, he might be required to pay. 42 U.S.C.A. § 3604(f)(3)(a) (2017); § 760.23(9), Fla. Stat. (2017). But he just wants to get through the doorways like he did in the past. Door closers can be tricky *758 to adjust, but that doesn’t provide a defense for not maintaining them.
Finally, Harding doesn’t apply here because that case involved a claim against a subsequent owner for accessibility problems created during the initial design and construction phase by the original owner when incorporating accessibility features was easier. As the Eleventh Circuit concluded, the sins of the original owner are not visited upon the subsequent purchaser. In contrast to Harding, as the Commission noted in this case, “there is no allegation that the Condominium in question was initially out of compliance with the applicable design-and-construction guidelines when it was built.” Instead, the original design met accessibility standards, which the subsequent purchaser is required to maintain. The Association is only being asked, at least as to the entry doors at issue, to maintain them push pressures at accessible levels, which seems a small lift. Affirmance of the Commission’s conclusion is proper,