UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 1, 2006[*]
Decided November 2, 2006

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-3967

| | |
|---|---|
| CARLOS M. CURRY, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Northern |
| | District of Illinois, Eastern |
| *v.* | Division |
| ADVOCATE BETHANY HOSPITAL, et al., | No. 04 C 7229 |
| *Defendants-Appellees.* | |
| | James B. Zagel, |
| | *Judge.* |

**O R D E R**

Carlos Curry filed a complaint seeking damages for the wrongful death of his mother, Deborah Curry, alleging violations of 42 U.S.C. §§ 13955dd, 1983, 1985, and 1986, and state law. Because Carlos is a prisoner, the district court examined the complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) and dismissed the federal-law claims for failure to state a claim. The state-law claims were dismissed without prejudice for lack of jurisdiction. He appeals. We affirm.

---

[*] The defendants were not served with process in the district court and are not participating in this appeal. After an examination of the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* Fed. R. App. P. 34(a)(2).

The facts according to the complaint, which we accept as true, are as follows. On August 7, 2002, Deborah suffered an acute asthma attack. She called 911 and paramedics brought her to Advocate Bethany Hospital's emergency room. Doctors intubated her. Following intubation, she suffered cardiac arrest and was resuscitated but never regained consciousness. She was treated at the hospital for approximately three weeks, during which time she was mistakenly injected with insulin even though she was not diabetic.

Carlos consented to the removal of his mother's life support on August 23, 2002, after which—contrary to doctors' expectations—his mother continued breathing unassisted. On August 28th his mother was transferred to a nursing home. Two days later, doctors at the nursing home determined that she was suffering from pneumonia. Doctors at Advocate Bethany asked that she be returned to their care, but Carlos refused and she was taken instead to Holy Cross hospital for treatment of the pneumonia. In September 2002 doctors at Holy Cross told Carlos that his mother had suffered a heart attack and a stroke back on August 7th because Advocate Bethany's emergency room doctors had misdiagnosed and improperly treated her condition. Deborah died in February 2003. According to the death certificate attached to the complaint, the immediate cause of death was hypertensive heart disease.

On February 25, 2005, Carlos filed his civil complaint against Advocate Bethany Hospital and seven physicians seeking $480 million in compensatory and punitive damages for the wrongful death of his mother. The complaint alleged that the emergency room doctors' failure to correctly diagnose and treat his mother's asthma attack violated the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 13955dd, and that a second EMTALA violation occurred when the defendants transferred his mother to a nursing home without stabilizing her. The complaint also alleged that doctors had individually and through a conspiracy violated his mother's constitutional rights under the Fifth, Eighth, and Fourteenth Amendments in violation of 42 U.S.C. §§ 1983, 1985 and 1986. Finally, the complaint alleged battery and medical malpractice claims under Illinois tort law.

The district court dismissed the EMTALA claims because it concluded that Deborah received "the full panoply of emergency care" as required by the statute. The district court also held that the EMTALA claims were untimely because Carlos filed his complaint more than two years after the alleged violations occurred. It dismissed the § 1983 claim because no defendant was acting under color of state law, and it dismissed the § 1985 and § 1986 claims because they were refuted by the medical records upon which those claims were based and which Carlos had supplied to the court.

With all federal-law claims dismissed, the district court determined that it did not have jurisdiction over the remaining state-law claims because the complaint failed to establish diversity jurisdiction under 28 U.S.C. § 1332. The district court noted that even if it had jurisdiction, it would have to dismiss the malpractice claim; under Illinois law a malpractice complaint must be supported by an affidavit from a health professional certifying that, in the professional's opinion, "there is a reasonable and meritorious cause for the filing of such action," and Carlos had not provided that affidavit. The state-law claims were dismissed without prejudice. The district court invited Carlos, within sixty days, to submit the physician's affidavit, a motion to reconsider, and a proposed amended complaint with proper allegations of diversity jurisdiction.

Carlos filed a motion to reconsider within sixty days. The motion did not address diversity jurisdiction, reasserting instead that the district court had jurisdiction because his EMTALA claims were meritorious. Carlos requested that the court allow him until August 1, 2005, to obtain the physician's affidavit. On August 1st, Carlos filed a motion for appointment of counsel in which he stated that his efforts to obtain a physician's affidavit on his own had been unsuccessful. On September 8, 2005, the district court denied Carlos's motion to reconsider because it did not show a manifest error of law or fact or present newly discovered evidence. The district court dismissed all other pending motions as moot.

We review a § 1915(e)(2)(B)(ii) dismissal de novo and accept as true the well-pleaded allegations contained in the complaint. *De Walt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000). Even applying the liberal standard applicable in pro se cases, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), we agree with the district court that the complaint has failed to state a claim under federal law. The "crux" of the complaint, Carlos says, are his claims under EMTALA. EMTALA was enacted to address the problem of "patient dumping," *see Johnson v. Univ. of Chi. Hosps.*, 982 F.2d 230, 233 n.7 (7th Cir. 1993), where hospitals transferred indigent patients from one hospital to the next while their emergency medical conditions worsened. *See Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002). EMTALA requires hospitals receiving federal funds to screen for an emergency medical condition any patient who comes to the hospital; if an emergency condition exists, the patient may not be transferred to another hospital or discharged until he or she has received stabilizing treatment. 42 U.S.C. § 1395dd; *see Johnson*, 982 F.2d at 232-33.

A plaintiff can plead himself out of court by pleading facts that undermine the allegations in his complaint. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). Carlos has done that with respect to his EMTALA claims. Exhibits attached to the complaint are treated as part thereof in accordance with Fed. R. Civ. Pro. 10.

These exhibits and Curry's own statements in the complaint establish that Advocate Bethany Hospital screened Deborah and initiated treatment within minutes of her arrival at the ER. Specifically, twenty-five minutes after her arrival in the ER, as her blood oxygen level continued to decrease, doctors intubated her. Despite promptly receiving the oxygen, Deborah went into cardiac arrest. The doctors then resuscitated her and kept her on life support for three weeks, until Carlos removed her to the nursing home. Thus, the hospital screened Deborah and stabilized her in accordance with EMTALA. *See Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 893 (7th Cir. 2003); *Johnson*, 982 F.2d at 232-33. That the treatment provided was ineffective—that it may even have involved a misdiagnosis or malpractice—does not violate EMTALA so long as she was stabilized. EMTALA is not a federal malpractice statute. *See, e.g., St. Anthony Hosp. v. Dep't of Health & Human Servs.*, 309 F.3d 680, 694 (10th Cir. 2002); *Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1169-70 (9th Cir. 2002); *Harry*, 291 F.3d at 770.

In a separate argument, Carlos contends that Advocate Bethany neglected to alert the nursing home that she had suffered a stroke and contracted pneumonia while in the hospital's care. Therefore, he argues, his mother was transferred to the nursing home without being "stabilized" for these two conditions that arose during her inpatient care at Advocate Bethany. There is a split of authority over whether EMTALA's stabilization requirement applies to conditions that arise *after* an individual is admitted for inpatient care. *Compare Bryant,* 289 F.3d at 1168-69 (no), *and Bryan v. Rectors & Visitors of the Univ. of Va.*, 95 F.3d 349, 352 (4th Cir.1996) (no), *with Lopez-Soto v. Hawayek*, 175 F.3d 170, 173-74 (1st Cir. 1999) (yes), *and Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1135 (6th Cir. 1990) (yes, in dicta).

Even if we assume that EMTALA applies to conditions that arise during inpatient care (and we assume further that the doctors at Advocate Bethany knew of both the pneumonia and stroke conditions, though the complaint says otherwise), the district court correctly held that the EMTALA claims should be dismissed for the additional reason that they are untimely. EMTALA requires that an action must be brought within two years of the date of the alleged violation. 42 U.S.C. § 1395dd(d)(2)(C). The latest date on which any potential EMTALA violation occurred is August 28, 2002, the date Advocate Bethany transferred Deborah to a nursing home. But the complaint was not filed until February 25, 2005, more than five months too late. Expiration of a statute of limitations is an affirmative defense, but "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002).

Carlos contends that equitable estoppel excuses his untimeliness because Advocate Bethany's doctors conspired to cover-up their malpractice. Equitable estoppel is only appropriate if Carlos was lulled into inaction by the defendants' fraudulent conduct upon which he actually and reasonably relied. *See Smith v. Potter*, 445 F.3d 1000, 1010 (7th Cir. 2006). Carlos negates any possibility that he relied on the defendants' cover-up by informing us in his complaint that in September 2002, within a few weeks of Deborah leaving Advocate Bethany hospital, three doctors at Holy Cross hospital informed Carlos that Deborah's cardiac arrest and stroke were caused when Advocate Bethany doctors misdiagnosed and improperly treated her asthma attack. Because Carlos tells us that he uncovered in less than a month the facts that the defendants conspired to cover-up, his equitable estoppel argument is unfounded.

Carlos's other federal-law claims also fail. We affirm the district court's dismissal of Carlos's § 1985 claim, although we rely on a different reason. *See Greeno v. Daley*, 414 F.3d 645, 657 (7th Cir. 2005); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). The only conceivably applicable subsection is § 1985(3) which requires that a plaintiff allege, among other things, that the defendants intended to harm Deborah out of racial or other class-based animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Grimes v. Smith*, 776 F.2d 1359, 1363-65 (7th Cir. 1985). Although intent may be alleged generally under Fed. R. Civ. P. 9(a), the complaint here makes no claim that the defendants intentionally harmed Deborah for reasons of racial or class-based hostility. For this reason, Carlos fails to state a claim under § 1985(3). *See Kyle v. Morton High Sch.*, 144 F.3d 448, 457 (7th Cir. 1998) (per curiam). Because the complaint fails to state a § 1985(3) claim, it necessarily fails to state a § 1986 claim. *See Grimes*, 776 F.2d at 1363 n.4. Lastly, Carlos fails to state a claim under § 1983 because all defendants, being private individuals and a private hospital, have not acted under color of law. *See Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). The district court properly dismissed the pendant state-law tort claims without prejudice because the federal claims were dismissed at screening. *See* 28 U.S.C. § 1367(c); *see also East-Miller v. Lake County Highway Dep't.*, 421 F.3d 558, 564-65 (7th Cir. 2005).

Carlos makes two additional arguments on appeal. First, he argues that the district court should have granted his motion for appointment of counsel to help him acquire the physician's affidavit. The denial of counsel was not an abuse of the district court's discretion because an attorney is not necessary to secure such an affidavit. Second, Carlos correctly points out that he filed his motion to reconsider on May 26th and not on August 1st as suggested in the district court's order of September 8, 2005. But this was a harmless error because the district court denied the motion not for untimeliness but on the merits: it identified no manifest error of law or fact, a determination that was not an abuse of discretion.

For the reasons stated above, the decision of the district court to dismiss Carlos's claims is AFFIRMED.